1  ROB BONTA
   Attorney General of California
2  HARINDER K. KAPUR
   Senior Assistant Attorney General
3  GREGORY M. CRIBBS
   Supervising Deputy Attorney General
4  JUSTIN BULLER
   Deputy Attorney General
5  State Bar No. 325265
   CHRISTOPHER C. LAMERDIN
6  Deputy Attorney General
   State Bar No. 162033
7   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
8   Telephone:  (415) 510-3476
    E-mail:  Christopher.Lamerdin@doj.ca.gov
9  *Attorneys for Defendants Erica Pan, in her*
   *official capacity as Director of the California*
10 *Department of Public Health and Rob Bonta,*
   *in his official capacity as Attorney General*
11 *of California*

12              IN THE UNITED STATES DISTRICT COURT

13            FOR THE SOUTHERN DISTRICT OF CALIFORNIA

14

15

16

17 | **ASHLYNN MARKETING dba KRAVE,** | 3:25-cv-1430-RSH-SBC |

18 |                                  | **DEFENDANTS' NOTICE OF** |

19 |                      Plaintiff,  | **MOTION TO DISMISS; MOTION;** |
   |                                  | **AND MEMORANDUM OF POINTS** |
   |                                  | **AND AUTHORITIES IN SUPPORT** |

20 |        v.                        | **OF MOTION** |

21 | **ERICA PAN, in her official capacity** | Date:       August 1, 2025 |

22 | **as Director of the California** | Dept:       3B |
   | **Department of Public Health, and** | Judge:      Hon. Robert S. Huie |

23 | **ROB BONTA, in his official capacity** | Trial Date:  Not Set |
   | **as Attorney General of California,** | Action Filed: June 4, 2025 |

24 |                      Defendants. | **PER CHAMBERS RULES, NO** |

25 |                                  | **ORAL ARGUMENT UNLESS** |
   |                                  | **SEPARATELY ORDERED BY** |
   |                                  | **THE COURT** |

26

27

28

─────────────────────────────────────────────

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion to Dismiss ........................................................... 1

Memorandum of Points and Authorities .......................................................... 3

    I.     Introduction and Summary ................................................... 3

    II.    Background Facts ................................................................... 4

    III.   Pertinent Law ........................................................................ 5

        A.    Fed. R. Civ. P. 12(b)(6) ............................................. 5

        B.    Fed. R. Civ. P. 12(b)(1) ............................................. 6

        C.    Applications of Fed. R. Civ. P. 12(b)(1) ................... 6

            1.    Sufficient Facts and Allegations ..................... 6

            2.    Eleventh Amendment Immunity ..................... 7

    IV.   Argument ............................................................................... 7

        A.    Plaintiff's Complaint Should be Dismissed in its Entirety, as it Fails to State a Commerce Clause Violation ..................... 7

            1.    Sections 111860 and 111865 Do Not Discriminate Against Interstate Commerce ............................................. 7

            2.    Sections 111860 and 111865 Do Not Regulate Extraterritorially .............................................................. 10

            3.    Sections 111860 and 111865 Do Not Substantially Burden Interstate Commerce ........................................... 11

        B.    The Attorney General Should be Dismissed ........................... 13

Conclusion ......................................................................................... 17

i

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Artichoke Joe's v. Norton*
   216 F. Supp. 2d 1084 (E.D. Cal. 2002) ...................................................... 7

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) .................................................................................. 6, 7

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) .................................................................................. 5, 6

*Brazil v. U.S. Dep't of Navy*
   66 F.3d 193 (9th Cir. 1995) ....................................................................... 13

*Cardenas v. Anzai*
   311 F.3d 929 (9th Cir. 1999) ....................................................................... 7

*Church v. Missouri*
   913 F.3d 736 (8th Cir. 2019) ..................................................................... 14

*Exxon Corp. v. Governor of Maryland*
   437 U.S. 117 (1978) .................................................................................. 8, 9

*Fitts v. McGhee*
   172 U.S. 516 (1899) ................................................................................... 14

*Flynt v. Bonta*
   131 F.4th 918 (9th Cir. 2025) ............................................................. *passim*

*Gant v. Cnty. of L.A.*
   772 F.3d 608 (9th Cir. 2014) ....................................................................... 5

*Gibbons v Ogden*
   9 Wheat. 1 (1824) ........................................................................................ 9

*Hearns v. San Bernardino Police Dep't*
   530 F.3d 1124 (9th Cir. 2008) ................................................................... 13

*Ileto v. Glock Inc.*
   349 F.3d 1191 (9th Cir. 2003) ..................................................................... 5

# <u>TABLE OF AUTHORITIES</u>
### (continued)

<u>Page</u>

*Indus. Tectonics, Inc. v. Aero Alloy*
    912 F.2d 1090 (9th Cir. 1990)...................................................................6

*Ivey v. Bd. of Regents of Univ. of Alaska*
    673 F.2d 266 (9th Cir. 1982)....................................................................5

*Knapp v. Hogan*
    738 F.3d 1106 (9th Cir. 2013)................................................................13

*Kokkoen v. Guardian Life Ins. Co. of Amer.*
    511 U.S. 375 (1994)..................................................................................6

*L.A. Cty. Bar Ass'n v. Eu*
    979 F.2d 697 (9th Cir. 1992)..................................................................15

*Long v. Van de Kamp*
    961 F.2d 151 (9th Cir. 1992)..................................................................16

*Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*
    714 F.2d 946 (9th Cir. 1983)..................................................................15

*McNutt v. Gen. Motors Acceptance Corp.*
    298 U.S. 178 (1936)..................................................................................6

*Nat'l Pork Producers Council v. Ross*
    598 U.S. 356 (2023).........................................................................8, 9, 12

*National Association of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (2012).............................................................................12

*Nichols v. Brown*
    859 F. Supp. 2d 1118 (C.D. Cal. 2012)................................................15

*Okpalobi v. Foster*
    244 F.3d 405 (8th Cir. 2001) (en banc)................................................14

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984)................................................................................14

*Philadelphia v. New Jersey*
    437 U.S. 617 (1978)..................................................................................9

iii

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Pike v. Bruce Church, Inc.*
397 U.S. 137 (1970) ...................................................................................... 11, 12

*Rosenblatt v. City of Santa Monica*
940 F.3d 439 (9th Cir. 2019) ............................................................................. 10

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) .............................................................................. 6

*Seminole Tribe of Fl. v. Florida*
517 U.S. 44 (1996) ............................................................................................. 14

*Snoeck v. Brussa*
153 F.3d 984 (9th Cir. 1998) ........................................................................ 15, 16

*Sofamor Danek Group, Inc. v. Brown*
124 F.3d 1179 (9th Cir. 1997) .............................................................................. 7

*Somers v. Apple, Inc.*
729 F.3d 953 (9th Cir. 2013) ................................................................................ 5

*Sprewell v. Golden State Warriors*
266 F.3d 979 (9th Cir. 2001) ................................................................................ 5

*Summitt Med. Assocs. P.C. v. Pryor*
180 F.3d 1326 (11th Cir. 1999) .......................................................................... 14

*Swierkiewicz v. Sorema N. A.*
534 U.S. 506 (2002) ........................................................................................... 13

*Ex parte Young*
209 U.S. 123 (1908) .............................................................................. 4, 14, 15, 16

**STATUTES**

United States Code, Title 10
§ 278 ..................................................................................................................... 9

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Health & Safety Code
  § 109875 .................................................................................................. 13
  § 111860 ............................................................................................ 3, 4, 15
  §§ 111860-111865 .................................................................................*passim*
  § 111865 ............................................................................................ 3, 4, 15

**CONSTITUTIONAL PROVISIONS**

California Constitution, Article V
  § 13 ........................................................................................................ 15

United States Constitution
  Eleventh Amendment ......................................................................*passim*
  Commerce Clause.................................................................................... 3

**COURT RULES**

Federal Rules of Civil Procedure
  Rule 8................................................................................................ 13, 14
  Rule 8(a)(2)............................................................................................ 13
  Rule 8(d)(1) ........................................................................................... 13
  Rule 12(b)(1) ...................................................................................... 6, 7
  Rule 12(b)(6) ...................................................................................... 5, 6

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on August 1, 2025,[1] in the above-entitled court, Defendants Erica Pan, in her official capacity as Director of the California Department of Public Health (hereinafter, "Director") and Rob Bonta, in his Official Capacity as Attorney General of California (hereinafter, "Attorney General") and (hereinafter collectively, "Defendants"), will and hereby do move for an order dismissing the entire action, with prejudice.

This Motion is brought pursuant to Rule 12(b)(1) and Rule 12(b)(6) on the grounds that Ashlynn Marketing dba Krave's (hereinafter, "Plaintiff") Complaint should be dismissed, without leave to amend, as it fails to state a claim upon which relief may be granted. Plaintiff's Complaint does not allege a violation of the Commerce Clause of the United States Constitution.

Moreover, the Complaint fails to plead a claim against the Attorney General because it does not allege injury and causation traceable to him, and the Attorney General is immune from liability, without *Ex parte Young* exception, pursuant to the Eleventh Amendment to the U.S. Constitution.

Pursuant to the Honorable Robert S. Huie's "Civil Pretrial and Trial Procedures," counsel for moving party hereby provides the following statement of compliance with the Motion Practice meet and confer requirement:

On June 20, 2025, counsel for the Defendants, Deputy Attorney General Christopher C. Lamerdin, conducted a conference call with Plaintiff's counsel, Andrew P. Young, Emily Statham, and Robert Durkin in an attempt to meet and confer. Although there was open communication and mutual exchange of positions, no resolution was reached during the telephone conference as to voluntary dismissal of the Attorney General and/or the issues raised in the anticipated motion to dismiss

---

[1] Per Courtroom 3B rules, no oral argument will be heard unless separately ordered by the Court.

as to all Defendants. Thus, counsel were not able to reach a resolution as to the motion to dismiss (hereinafter, "Motion").

This Motion is based on this Notice, the Memorandum of Points and Authorities in support thereof, the papers and pleadings on file in this action, and such oral argument as may be presented at the hearing.

Dated:  June 27, 2025

Respectfully submitted,

ROB BONTA
Attorney General of California
HARINDER K. KAPUR
Senior Assistant Attorney General
GREGORY M. CRIBBS
Supervising Deputy Attorney General

*/s/Christopher C. Lamerdin*
CHRISTOPHER C. LAMERDIN
JUSTIN BULLER
Deputy Attorneys General
*Attorneys for Defendants Erica Pan, in her official capacity as Director of the California Department of Public Health, and Rob Bonta, in his official capacity as Attorney General of California*

SD2025801959
44676650.docx

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION AND SUMMARY

Plaintiff's "Complaint for Declaratory and Injunctive Relief" (hereinafter, "Complaint") seeks a declaratory judgment invalidating California Health and Safety Code[2] sections 111860 and 111865 (hereinafter "Sections 111860 and 111865") as allegedly violating the Commerce Clause of the United States Constitution. Plaintiff's Complaint also seeks a permanent injunction enjoining Defendants from enforcing Sections 111860 and 111865 as they relate to Plaintiff's kratom products.

Plaintiff's Complaint should be dismissed in its entirety, as it fails to state any dormant Commerce Clause violation. Bottom line, Plaintiff's Complaint fails to show that Sections 111860 and 111865, either on their face, or as applied, are discriminatory, that they regulate extraterritorially, or that they substantially burden interstate commerce. Thus, Plaintiff's Complaint should be dismissed without leave to amend.

Independent of Plaintiff's Complaint's failure to state any dormant Commerce Clause violation, the Attorney General is named in the Complaint "in his official capacity as the Attorney General of California," and he is alleged to be "empowered to enforce the provisions of Cal. Health & Safety Code §§ 111860-111865 that make their violation a civil offense." Complaint ¶ 12. However, Sections 111860 and 111865 provide no such "empowerment" to the Attorney General, nor does the Complaint identify any other alleged authority or duty of the Attorney General in connection with enforcement of Sections 111860 and 111865. Further, the Complaint fails to identify *any* wrongful conduct alleged to have been committed by the Attorney General. As a result of these deficiencies, the Complaint - against the Attorney General - warrants dismissal, as Plaintiff cannot legitimately

---

[2] Further statutory references will be to the Health and Safety Code unless otherwise indicated.

1  invoke the *Ex parte Young* exception to the Attorney General's immunity from suit
2  under the U.S. Constitution's Eleventh Amendment (hereinafter, the "Eleventh
3  Amendment").

4  **II.  BACKGROUND FACTS**

5      According to Plaintiff's Complaint, Plaintiff owns and operates a business that
6  manufactures and sells kratom products throughout the United States, with its
7  warehouse and manufacturing facility located in Santee, California. Complaint, ¶ 2.
8  Plaintiff's customers include individual consumers and wholesalers/distributors
9  both within and outside of California. Complaint, ¶ 60. Plaintiff ships its kratom
10  products using ground freight from its Santee, California warehouse to customers
11  across the United States, with some exceptions. Complaint ¶ 67.

12      Kratom, in its natural form, is a leaf of plant grown in Southeast Asia. Kratom
13  can be consumed by eating the leaves whole in foods, chewing the leaves, brewing
14  leaves into a tea, grinding the leaves into a powder and consuming the powder, or
15  creating an extract. Complaint, ¶ 1.

16      Plaintiff's Complaint alleges that the Federal Food and Drug Administration
17  ("FDA") has stated that kratom, when added to food, is an unsafe food additive and
18  that kratom cannot be lawfully marketed as an ingredient in conventional foods.
19  Complaint, ¶ 35. The FDA has also stated that kratom is a New Dietary Ingredient
20  ("NDI") (a dietary ingredient not sold in the U.S. prior to October 15, 1994) and
21  cannot be legally marketed in or as a dietary supplement because, according to the
22  FDA, there is not a basis to provide that kratom does not present a significant or
23  unreasonable risk of illness or injury. Complaint, ¶ 36.

24      Plaintiff's Complaint further alleges that Section 111860 empowers the
25  California Department of Public Health (hereinafter, the "Department") to embargo
26  adulterated, misbranded, or falsely advertised foods, drugs, devices, and cosmetics.
27  Section 111865 forbids embargoed foods from being removed, sold, or disposed of
28  *anywhere in the United States.* Complaint, ¶ 42.

4

On May 15, 2025, the Department inspected Plaintiff's Santee, California warehouse. Complaint, ¶ 68. As a result of the inspection, the Department determined that Plaintiff "unlawfully manufactured and held adulterated products that contain an unsafe food additive." Complaint, ¶ 69. In addition, the Department determined that Plaintiff "'unlawfully manufactured and held misbranded products." Complaint, ¶ 70.

The Department subsequently issued an embargo for "[a]ll [of Krave's] products containing kratom or kratom derivatives, including, but not limited to, raw ingredients, in-production and finished products including powders, capsules, liquids and tablets." Complaint, ¶ 71.

## III. PERTINENT LAW

### A. Fed. R. Civ. P. 12(b)(6)

A defendant is entitled to dismissal of an action under Federal Rule of Civil Procedure, rule 12(b)(6) (hereinafter, "Rule 12(b)(6)") where the plaintiff (1) has failed to state a cognizable legal theory, or (2) has alleged insufficient facts under a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). In evaluating a Rule 12(b)(6) motion, the court accepts as true all material facts alleged in the complaint and interprets them in the light most favorable to the non-moving party. *Gant v. Cnty. of L.A.,* 772 F.3d 608, 614 (9th Cir. 2014). However, the court does not accept as true "unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *see also Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (explaining that the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

"Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982); *see also Bell Atl.*

5

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (to survive a Rule 12(b)(6) motion to dismiss, the pleading's "[f]actual allegations must be enough to raise a right to relief above the speculative level").

### B.    Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure, rule 12(b)(1) (hereinafter, "Rule 12(b)(1)") permits dismissal of a complaint for lack of subject-matter jurisdiction. *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A Rule 12(b)(1) motion may be a facial attack asserting "that the allegations in the complaint are insufficient on their face to invoke federal jurisdiction  *Safe Air*, 373 F.3d at 1039. Even though a Rule 12(b)(1) motion is brought by a litigant seeking dismissal of an adverse complaint for lack of subject-matter jurisdiction, "[t]he [opposing] party asserting jurisdiction has the burden of proving all jurisdictional facts." *Indus. Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090, 1092 (9th Cir. 1990) (*citing McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 189 (1936)). In effect, the court presumes lack of jurisdiction until the party invoking the court's jurisdiction proves otherwise. *Kokkoen v. Guardian Life Ins. Co. of Amer*., 511 U.S. 375, 377 (1994).

### C.    Applications of Fed. R. Civ. P. 12(b)(1)

A Rule 12(b)(1) motion is appropriately used to resolve at least two kinds of subject-matter jurisdiction issues which are applicable here: (1) allegations must be sufficient enough to plausibly – not merely possibly – allow the reasonable inference that the defendant is liable for the misconduct alleged, and/or (2) immunity under the Eleventh Amendment to the U.S. Constitution.

#### 1.    Sufficient Facts and Allegations

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(1) and/or Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556

6

U.S. 662, 678 (2009). The complaint must contain sufficient factual matter, accepted as true, to plausibly – not merely possibly – allow the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 678-679.

### 2. Eleventh Amendment Immunity

The Eleventh Amendment generally bars lawsuits in federal courts against officials of U.S. states, without the officials' consent. *See Cardenas v. Anzai*, 311 F.3d 929, 934 (9th Cir. 1999); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1110-11 (E.D. Cal. 2002). Eleventh Amendment immunity is properly determined on a Rule 12(b)(1) motion. *See Sofamor Danek Group, Inc. v. Brown*, 124 F.3d 1179, 1183 n.2 (9th Cir. 1997).

## IV. ARGUMENT

### A. Plaintiff's Complaint Should be Dismissed in its Entirety, as it Fails to State a Commerce Clause Violation

Plaintiff's Complaint should be dismissed, in its entirety, as it fails to state a dormant Commerce Clause violation. Plaintiff's Complaint alleges that Sections 111860 and 111865 violate the Commerce Clause by (1) discriminating against out-of-state buyers and markets for kratom products; (2) that they extend California's police powers beyond its borders by regulating kratom and kratom producers and the kratom market outside the state of California; and (3) that they place excessive burdens on interstate commerce without advancing any legitimate local interest. Complaint ¶¶ 87, 96, and 103. However, none of these allegations are supported by the factual allegations contained in the Complaint and they do not support a cognizable dormant Commerce Clause claim.

### 1. Sections 111860 and 111865 Do Not Discriminate Against Interstate Commerce

Plaintiff asserts that Sections 111860 and 111865 are discriminatory on their face and as they are applied. Complaint, ¶ 87. However, the factual allegations contained in the Complaint do not support these claims.

7

At the core of the dormant Commerce Clause, is its prohibition against "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 369 (2023)(internal quotation marks omitted).) However, Plaintiff's Complaint fails to not only identify any in-state economic interest that has benefited by the Department's embargo, but also fails to identify any out-of-state entity that is burdened in its competition with any in-state entities. Nor can Plaintiff do so. The Department's embargo is based on a finding that kratom is unsafe, which is consistent with the FDA's position, and applies evenhandedly to all kratom products in California. Put simply, to the extent there are competitors in a kratom market, the Department's embargo of all kratom products found in the State does not "advantage in-state firms or disadvantage out-of-state rivals." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025) (quoting *Nat'l Pork Producers*, 598 U.S. at 370). Just as California's requirements for ownership of in-state cardrooms did not discriminate because it treated all potential owners equally—" whether [based] in-state or out-of-state"—so, too, the Department's embargo applies to all entities—whether based in California or not—that bring kratom products into the State. *Id.* at 927.

To the extent the Department's embargo results in entities keeping their kratom products out of California, that is not a dormant Commerce Clause violation. *Id.* ("[W]e have previously rejected arguments that state laws treating out-of-state and in-state entities similarly, but which prevent them from structuring or operating their business as they prefer, reflect improper discrimination in favor of in-state interests." (citing cases). "The fact that the burden of a state regulation falls on some interstate companies does not, by itself, establish a claim of discrimination against interstate commerce." *Exxon Corp. v. Governor of Maryland*, 437 U.S. 117, 126 (1978). Where, as here, "in-state [firms] will have no competitive advantage over out-of-state [firms]," there is no discrimination under

the dormant Commerce Clause. *Id.*

Plaintiff's Complaint asserts that Sections 111860 and 111865, on their face, or as applied "discriminates against out-of-state buyers and markets for kratom products." Complaint ¶ 87. Plaintiff's Complaint appears to contend that the dormant Commerce Clause must ensure that out-of-state buyers have access to the products of Plaintiff's specific company. But "the Clause protects the interstate market, not particular interstate firms." *Exxon*, 437 U.S. at 127. Thus, where, as here, "there is no reason to assume that [plaintiffs'] share of the entire supply will not be promptly replaced by other interstate [producers]," there is no impermissible burden" on the market, much less discrimination. *Id.*

Finally, Plaintiff's Complaint alleges that any state-imposed embargo of goods found in the state would violate the dormant Commerce Clause. Complaint, ¶¶ 86-88. These allegations fly in the face of two hundred years of Supreme Court precedent, recognizing "that the States' constitutionally reserved powers enable them to regulate commerce in their own jurisdictions in ways sure to have 'a remote and considerable influence on commerce' in other States." *Nat'l Pork Producers*, 598 U.S. at 368 (quoting *Gibbons v Ogden*, 9 Wheat. 1, 203, 22 U.S. 1, 6 L.Ed. 23 (1824)). "By way of example" of the kinds of regulations States may adopt, the Court pointed to "[i]nspection laws" and "quarantine laws," both of which could prevent goods from crossing state borders. *Id.; see also Flynt*, 131 F.4th at 926 ("The state's desire to prevent crime and gambling-related corruption does not amount to the kind of economic protectionism that would support a finding of discriminatory purpose."). As *Philadelphia v. New Jersey,* 437 U.S. 617, 624 (1978) reiterated (and *Nat'l Pork Producers* further confirmed), "[t]he crucial inquiry … must be directed to determining whether [the challenged law] is basically a protectionist measure," and there is simply nothing protectionist about this embargo. *See also Foster-Fountain Packing*, 278 U.S. at 10 (finding protectionism where Louisiana law's purpose was "to bring about the removal of

9

1   the packing and canning industries from Mississippi to Louisiana").

2       Given that the Department's embargo of Plaintiff's kratom products only

3   occurred within California, and that it was not designed to benefit in-state economic

4   interests, or burden out-of-state economic interests, it does not unconstitutionally

5   discriminate against interstate commerce.

6       **2.    Sections 111860 and 111865 Do Not Regulate Extraterritorially**

7

8       Plaintiff's Complaint also alleges that Sections 111860 and 111865 "violate

9   the Commerce Clause and principles of interstate federalism by regulating kratom

10  producers and the kratom market outside the State of California," and "extend

11  California's police powers beyond its borders by regulating conduct that occurs

12  outside the state by those with no connection to California." Complaint, ¶¶ 96, 97.

13      Despite these allegations, all activity alleged in the Complaint took place in

14  California and did not "extend California's police powers beyond its borders."

15  Indeed, because the embargoed products are *in California*, it cannot be said that

16  those products have no connection with the State. "California has therefore validly

17  exercised the usual legislative power of a State to act upon persons and property

18  within the limits of its own territory." *Flynt*, 131 F.4th at 929. Just as the plaintiffs

19  in *Flynt* had "connections with California because they operate cardrooms there,"

20  *id.*, Plaintiff's Complaint alleges connections with the State because it operates a

21  production and storage facility in California. Complaint, ¶ 64. The inspection and

22  embargo occurred at Plaintiff's warehouse in Santee, California, and thus did not

23  impose any condition on kratom – on its use, sale, or disposal – anywhere outside

24  of California. Complaint, ¶¶ 68-71. *Rosenblatt v. City of Santa Monica*, 940 F.3d

25  439, 445 (9th Cir. 2019) (describing decision upholding "state law banning shark

26  fin trading" in California, although that law prevented the export of those fins.)

27  Therefore, Plaintiff's Complaint fails to set forth allegations that Defendants'

28  actions extended extraterritorially beyond California's power to regulate within its

own state.

### 3. Sections 111860 and 111865 Do Not Substantially Burden Interstate Commerce

Finally, Plaintiff's Complaint alleges that Sections 111860 and 111865 "place excessive burdens on interstate commerce with advancing and legitimate local interest." Complaint, ¶ 103. "Under *Pike*, a plaintiff must demonstrate that a challenged law imposes a "substantial" or "significant" burden on interstate commerce before *Pike* balancing can occur." *Flynt*, 131 F.4th at 925. (*citing Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970).)  Only "if plaintiffs show a substantial burden on interstate commerce," will a court "proceed[] to determine whether that burden is clearly excessive in relation to the putative local benefits." *Id.* (internal quotation marks omitted). At that second stage, "unless the benefits of the state's law are illusory, courts typically accept the state's articulation of the law's claimed benefits." *Id.* (internal quotation marks omitted). And, notably, "courts have sometimes said that state regulations justified on public safety grounds enjoy a strong presumption of validity." *Id.* (internal quotation marks omitted).

Plaintiff's Complaint fails to identify, much less establish, any cognizable, substantial burden the embargo of Plaintiff's specific goods imposes on interstate commerce. "[M]ost statutes that impose a substantial burden on interstate commerce do so because they are discriminatory," *Id.* at 932 (internal quotation marks omitted). And, as shown above, there is nothing discriminatory about the embargo at issue. It simply does not favor any in-state economic interests at the expense of out-of-state competitors.

"Absent discrimination that favors in-state economic interests, state laws can create a substantial burden against interstate commerce based on inconsistent regulation of activities that are inherently national or require a uniform system of regulation. (internal quotation marks omitted). Plaintiff does not—and cannot—establish that the marketing kratom products is somehow more "inherently

11

national," than marketing pork or other products around which courts have rejected such claims. *See Id.* (recognizing that both the Ninth Circuit "and the Supreme Court rejected a *Pike* argument in *Pork Producers*," despite allegations that "California's required changes to pig-farming and pork-production practices throughout the United States will cost American farmers and pork producers hundreds of millions (if not billions) of dollars"). Nor has Plaintiff attempted to allege that kratom products require a uniform system of regulation, presumably in part because those products are not marketable at all under federal law. As in *Flynt*, "ultimately, plaintiffs' burden argument comes down to the fact that [the embargo] impose a burden on them," but "a loss to some specific market participants does not, without more, suggest that the state statute impedes substantially the free flow of commerce from state to state." *Id.* (internal quotation marks omitted).

Because Plaintiff's *Pike* claim fails at the first step, this Court need not reach the putative benefits of the embargo. *Id.* But, if it did, Plaintiff's Complaint would still fail to establish a dormant Commerce Clause violation. States have broad authority to enact non-discriminatory laws to protect public health, even when such laws impact interstate commerce. See *National Association of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1145 (2012) ["The U.S. Supreme Court generally has supported the rights of states to impose even burdensome regulations in the interest of local health and safety."].) The Department's embargo is a neutral public health measure that applies equally to all kratom products, regardless of origin. Sections 111860 and 111865 permit the Department to embargo any food, drug, device, or cosmetic that is adulterated, misbranded, or falsely advertised. The Department has a legitimate interest in protecting California residents from unapproved substances such as kratom. Plaintiff has not remotely overcome the presumption of validity this interest creates.

### B.    The Attorney General Should be Dismissed

If the Court is not inclined to dismiss Plaintiff's Complaint in its entirety, the Attorney General should be dismissed as a defendant of Plaintiff's Complaint because the Complaint does not meet the pleading requirements set forth in Rule 8 and the Attorney General is entitled to sovereign immunity. Rule 8 requires a plaintiff to set forth a short and plain statement of each of its claims showing that it is entitled to relief, as well as allegations that are simple, concise, and direct. Fed. R. Civ. P., §§ 8(a)(2), 8(d)(1); *see also Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1127 (9th Cir. 2008) (characterizing the requirements set forth in Rule 8(a)(2) as a "right and duty of a plaintiff initiating a case"). Dismissal is appropriate if a complaint does not comply with these pleading requirements. *Knapp v. Hogan*, 738 F.3d 1106, 1109 (9th Cir. 2013). Even applying liberal pleading standards, "pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *Brazil v. U.S. Dep't of Navy*, 66 F.3d 193, 199 (9th Cir. 1995). Hence, Rule 8 mandates that Plaintiff allege facts that demonstrate how it was denied its constitutional rights, *and by whom*. *See Swierkiewicz v. Sorema N. A*., 534 U.S. 506, 512 (2002) (reiterating that Rule 8(a)(2) requires complaints to contain a statement that gives each defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests").

Plaintiff's Complaint fails to satisfy those pleading requirements. Other than stating the Attorney General is being sued in his official capacity and stating, without support, that he "is empowered to enforce the provisions of Cal. Health & Safety Code §§ 111860-111865 that make their violation a civil offense," the Complaint does not plead any facts or allegations that the Attorney General had any involvement with, or authority over Sections 111860 and 111865 set forth in the Sherman Food, Drug, and Cosmetic Law (Health and Safety Code section 109875 et seq.) Moreover, the Attorney General is not mentioned in any other paragraph of the Complaint. In short, and among other things, the complete lack of such facts

13

and allegations preclude the Attorney General from mounting a defense to Plaintiff's claims. Moreover, at a minimum, Rule 8 mandates that Plaintiff identify the responsible party or parties and allege facts that connect the identified responsible party or parties to a violation of law. Such a *minimum* pleading requirement would provide the Attorney General fair notice of what the Plaintiff's claims are and the factual basis upon which they rest. As illustrated above, the complete lack of any facts or allegations pled against a party is simply not permissible under the Federal Rules of Civil Procedure.

In addition, as to the Attorney General, sovereign immunity generally prohibits lawsuits against states and state officers in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984). Sovereign immunity bars all suits against the state regardless of the relief sought, including declaratory and injunctive relief. *See id.* at 101; *Seminole Tribe of Fl. v. Florida,* 517 U.S. 44, 58 (1996). State sovereign immunity applies unless the state has unequivocally consented to such a suit or Congress has abrogated the state's immunity. *See*, *e.g.,* *Church v. Missouri,* 913 F.3d 736, 743 (8th Cir. 2019). Neither has happened here.

The Supreme Court has recognized a limited exception to Eleventh Amendment sovereign immunity in *Ex parte Young,* 209 U.S. 123 (1908), which permits actions for prospective declaratory or injunctive relief against state officers sued in their official capacities for their alleged violations of federal law. Even assuming *Ex parte Young's* exception can apply to overcome a state's general sovereign immunity, its requirements are not met here.  For the *Ex parte Young* exception to apply, the state official sued must have direct responsibility for enforcement of the allegedly unconstitutional statute.  *Okpalobi v. Foster,* 244 F.3d 405, 416-417 (8th Cir. 2001) (en banc); *Summit Med. Assocs. P.C. v. Pryor,* 180 F.3d 1326, 1341-42 (11th Cir. 1999). General executive responsibility or general enforcement powers are not enough. *See*, *e.g., Church,* 913 F.3d at 748; *Fitts v.*

*McGhee,* 172 U.S. 516, 530 (1899); *L.A. Cty. Bar Ass'n v. Eu,* 979 F.2d 697, 704 (9th Cir. 1992).

Here, Plaintiff fails to allege a sufficiently direct connection between the Attorney General and the administration and/or enforcement of Sections 111860 and 111865, that is the subject of the Complaint. Under Sections 111860 and 111865, enforcement is performed by the Department, as Section 111860 states, "Whenever an authorized agent of the department finds, or has probable cause to believe, that any food, drug, device, or cosmetic is adulterated, misbranded, or falsely advertised within the meaning of this part … that agent shall affix to the food, drug, device, cosmetic, or component thereof, a tag or other appropriate marking," and Section 111865 states, " It is unlawful for any person to remove, sell, or dispose of a detained or embargoed food, drug, device, or cosmetic without permission of an authorized agent of the department or the court." Neither section references the Attorney General regarding involvement or enforcement.

Accordingly, the Attorney General is left only to assume that he is named solely based upon his duties as "chief law officer of the State,"[3] but Courts have repeatedly held that such general powers are not sufficient to establish the connection required for application of the *Ex parte Young* exception. "It is well established that 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Nichols v. Brown*, 859 F. Supp. 2d 1118, 1131–32 (C.D. Cal. 2012) (quoting *Snoeck v. Brussa,* 153 F.3d 984, 986 (9th Cir. 1998)); *see also Los Angeles Branch NAACP v. Los Angeles Unified School Dist.,* 714 F.2d 946, 953 (9th Cir. 1983) (holding the governor's "general duty to enforce California law ... does not establish the requisite connection between him and the unconstitutional acts" alleged in suit). Unless the state officer has some

---

[3]  See Cal. Const., art V, § 13 [Attorney General is "chief law officer of the State" and has a duty "to see that the laws of the State are uniformly and adequately enforced"].)

1    responsibility to enforce the statute or provision at issue, the "fiction" of *Ex parte*

2    *Young* cannot operate. Only if a state officer has the authority to enforce an

3    unconstitutional act in the name of the state can the Supremacy Clause be invoked

4    to strip the officer of official or representative character and subject them to the

5    individual consequences of their conduct. *Long v. Van de Kamp,* 961 F.2d 151, 152

6    (9th Cir. 1992).

7          For a state official to be legitimately subject to a lawsuit in federal court

8    challenging the official's oversight of a state law (in the "*Ex parte Young*"

9    exception to the Eleventh Amendment), the official must have a "fairly direct"

10   connection with the enforcement of the law, and "there must be a real threat of

11   enforcement…Absent a real likelihood that the state official will employ his [or

12   her] powers against plaintiffs' interests, the Eleventh Amendment bars federal court

13   jurisdiction." *Id.*; *Snoeck,* 153 F.3d at 987 ("[T]he officers of the state

14   must…threaten or be about to commence civil or criminal proceedings to enforce

15   an unconstitutional act"). For those reasons, Plaintiff has failed to satisfy federal

16   pleading requirements against the Attorney General and furthermore, under the

17   Eleventh Amendment jurisprudence cited above, the Attorney General is immune to

18   Plaintiff's Complaint.

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

Defendants' Motion to Dismiss (3:25-cv-1430-RSH-SBC)

1

**CONCLUSION**

2
    For the foregoing reasons, the Court should dismiss the Attorney General, as

3
well as, the remainder of Plaintiff's Complaint.

4

5
Dated:  June 27, 2025                  Respectfully submitted,

6
                                   ROB BONTA
                                   Attorney General of California

7
                                   HARINDER K. KAPUR
                                   Senior Assistant Attorney General

8
                                   GREGORY M. CRIBBS
                                   Supervising Deputy Attorney General

9

10

11
                                   */s/Christopher C. Lamerdin*

12
                                   CHRISTOPHER C. LAMERDIN
                                   JUSTIN BULLER

13
                                   Deputy Attorneys General
                                   *Attorneys for Defendants Erica Pan,*

14
                                   *in her official capacity as Director of*
                                   *the California Department of Public*

15
                                   *Health and Rob Bonta, in his official*
                                   *capacity as Attorney General of*

16
                                   *California*

17

18

19

20

21

22

23

24

25

26

27

28

Defendants' Motion to Dismiss (3:25-cv-1430-RSH-SBC)