Andrew P. Young, CA Bar No. 326540
ayoung@swlaw.com
SNELL & WILMER L.L.P.
3611 Valley Centre Drive, Ste. 500
San Diego, California 92130
Telephone:  858.434.5020
Facsimile:   858.434.5006

Emily E. Statham, D.C. Bar No. 90021766;
MD Bar No. 2211290207*
estatham@swlaw.com
SNELL & WILMER L.L.P.
2001 K Street NW Ste. 425
Washington, D.C. 20006
Telephone: 771-772-5506

Robert Durkin, PA Bar No.206065;
D.C. Bar No. 90028430*
rdurkin@awglaw.com
Amin Wasserman Gurnani
5185 MacArthur Blvd NW
Suite 230
Washington, D.C. 20016
Telephone :202 921 3673
Facsimile: 312 884 7352

*Admitted pro hac vice

Attorneys for Plaintiff
Ashlynn Marketing dba KRAVE

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLYNN MARKETING dba KRAVE<br><br>Plaintiff,<br><br>v.<br><br>ERICA PAN, in her official capacity as Director of the California Department of Public Health, and ROB BONTA, in his official capacity as Attorney General of California<br><br>Defendants. | Case No. 3:25-cv-1430-RSH-SBC<br><br>**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:  July 10, 2025<br>Time:  3:30 p.m.<br>Dept:  3B<br>Judge: The Honorable Robert S. Huie<br>Action Filed:  6/04/2025 |

## I.  INTRODUCTION

Defendants fail to meaningfully address the constitutional issue raised by California Health & Safety Code §§ 111860–111865—specifically, how the statute is interpreted and applied to the kratom industry. As applied here, it prohibits Plaintiff from engaging in otherwise lawful transactions with out-of-state buyers. Kratom is legally possessed, sold, and consumed in many states across the country. Although California relies on FDA guidance expressing concern about kratom marketing, those concerns are irrelevant here. Plaintiff does not market kratom as an FDA-regulated product, nor is there any allegation that it is adulterated, misbranded, or unlawful under federal standards.

While Defendants assert authority to regulate adulterated food in California, they do not justify extending that authority to block kratom shipments to states where it is explicitly legal. The embargo applies regardless of whether kratom is sold or consumed in California, and Defendants have not identified any legitimate in-state interest the embargo serves. As applied, the embargo burdens Plaintiff's ability to engage in lawful interstate commerce without serving any articulated benefit to California residents. This is not merely an in-state regulatory dispute. The statute prohibits sale of (internationally imported) and now embargoed goods beyond California's borders, effectively projecting California law into other jurisdictions and burdening interstate commerce. That burden is especially significant because Plaintiff seeks only to sell kratom outside California, in states where it is lawful.

Defendants also mischaracterize Plaintiff's discrimination claim. The issue is not preferential treatment for in-state businesses, but California's subordination of lawful interstate commerce to its own policy choices. The embargo treats out-of-state sales as equivalent to in-state sales simply because the product originates in California. That approach disadvantages interstate commerce by imposing restrictions solely based on the product's origin, even when the destination state

- 2 -

4903-4225-4675

1    permits its sale. By halting the interstate movement of goods physically present in

2    California—regardless of whether they are sold in-state—California imposes a

3    structural disadvantage on its businesses and interferes with a national market

4    Congress is meant to regulate.

## II.    THE STATE IS IN VIOLATION OF THE DORMANT COMMERCE CLAUSE

### A.    The Extraterritoriality Doctrine Forbids CDPH's Conduct

Defendants argue that their conduct does not violate the extraterritoriality doctrine because "the material in question has not been removed from the State."[1] Dkt. 14 at 8. But the question is not whether Plaintiff has yet violated any statute—it is whether the statute claimed to be violated prohibits Plaintiff from engaging in transactions that occur lawfully outside California. Cal. Health & Safety Code § 111865 makes it unlawful for "any person to… sell… a detained or embargoed food, drug, device, or cosmetic," regardless of the jurisdiction into which the product will be sold. In this case, the plaintiff is not allowed to complete a sale or transfer of the product to a location entirely outside of California, even if the product will never come back to California, simply because California previously placed an embargo on that product. This restriction applies even if the embargo was unjustified—meaning it had no scientific basis, was flawed, or was purely a political decision. This extraterritorial reach directly regulates out-of-state commerce and interferes with Plaintiff's ability to engage in business activities that are lawful in other states, precisely what the extraterritoriality doctrine forbids. As being applied, the statute restricts Plaintiff from completing lawful sales to out-of-state buyers, imposing a legal barrier to transactions that would otherwise occur entirely in states where the product is permitted.

Further, as specifically applied in this case, this application of these statues

---

[1] Removing the material may subject the Plaintiff to criminal prosecution which the state has already threatened.

PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY
INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

SNELL
& WILMER

1    goes beyond permissible state authority. Unlike statutes that regulate in-state conduct

2    and may incidentally affect out-of-state actors, §§ 111860–111865 directly block

3    Plaintiff from participating in markets outside California based solely on California's

4    internal policy determinations. The restriction is not limited to ensuring products sold

5    in California meet certain standards; it prohibits sales to out-of-state consumers even

6    when those transactions comply fully with the laws of those jurisdictions. In doing

7    so, the statute imposes a burden on interstate commerce by controlling economic

8    conduct that is beyond California's legitimate regulatory reach.

9         Defendants' reliance on *Flynt v. Bonta* is misplaced. There, the Ninth Circuit

10   upheld a law that conditioned the holding of a California cardroom license on

11   financial disinterest in certain gambling enterprises, including those out of state. But

12   the law at issue in *Flynt* did not prohibit people from engaging in out-of-state

13   commerce; it simply limited a regulatory privilege—owning a licensed cardroom in

14   the state of California—based on certain affiliations. In contrast, §§ 111860–111865

15   is being applied in a manner that prohibits interstate commerce directly and

16   unconditionally, barring the export of kratom to lawful markets without regard to any

17   licensure or privilege within California.

18        Similarly, *Rosenblatt v. City of Santa Monica* offers no support for

19   Defendants' position. The ordinance challenged there was directed at short-term

20   rentals within the city and did not regulate transactions occurring wholly outside the

21   state. The Ninth Circuit rejected the extraterritoriality challenge precisely because

22   the law did not "directly regulate[] the interstate or extraterritorial aspect" of the

23   business. 940 F.3d 439, 445. That rationale does not apply to the statutes at issue

24   here.

25        *Daniels Sharpsmart Inc. v. Smith*, however, is more closely aligned with this

26   case. There, the court struck down a California law that attempted to regulate the

27   disposal of medical waste—even when the disposal occurred outside California. The

28

SNELL & WILMER

PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY
INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

court did not limit its analysis to where the waste was located but instead focused on the location of the transaction. The relevant question was whether the regulated conduct occurred in other states and complied with their laws. The same is true here: Plaintiff's intended sales and deliveries would occur in states that permit the sale of kratom. In this instance, California's application of law prevents those transactions from taking place, not because of a viable charge of adulteration or misbranding – the product at question is not a food, but only because CDPH disapproves of kratom.

In *Daniels*, the Ninth Circuit cautioned against allowing a state to "regulate the use or disposal of any item—product or refuse—everywhere in the country if it had its origin in California." 889 F.3d 608, 616. The same concern is present here. Plaintiff's have not been permitted to move or sell their kratom out of state because it originated or is stored in California. The burden on interstate commerce is significant: Plaintiff is prevented from completing lawful transactions in other states, solely because the goods are embargoed within California. This is not a case of incidental effect; it is a direct restriction on the flow of goods into lawful markets outside the state.

Defendants also mischaracterize Plaintiff's argument by suggesting that any embargo on in-state goods would necessarily violate the Dormant Commerce Clause. Dkt. 14 at 7. That is incorrect. Plaintiff does not dispute that California may lawfully regulate products sold within its borders, including through quarantine and inspection laws. What the State may not do is prohibit the export of lawful goods absent a showing that "the very movement of the [article] into or through [the State] endangers health" of California residents. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 628 (1978). CDPH has not made any such showing here. Rather, it asserts that allowing the sale of kratom outside the state would harm Californians indirectly. That rationale is insufficient to justify the substantial burden the statute imposes on interstate commerce.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

SNELL & WILMER

1    By enforcing a blanket embargo based on its policy preference—not on an

2    objective basis of risk—California effectively overrides the considered judgments of

3    other sovereign states about kratom's safety. This places an undue burden not only

4    on California-based sellers, but also on out-of-state buyers and vendors, who are

5    prevented from engaging in lawful commerce—even where the transactions fully

6    comply with the receiving state's laws. Here, California isn't protecting its residents

7    from a demonstrated hazard; it is prioritizing its own capricious policy stance over

8    that of other states.

9    **B.    CDPH's Embargo Discriminates Against Out-of-State Commerce
10       by Imposing Its Own Policy Preferences Beyond its Borders**

11    It is Defendants, not Plaintiff, who "mischaracterize[] and misappl[y]" the

12    antidiscrimination principle. Dkt. 14 at 5. The principle "prohibits the enforcement

13    of state laws 'driven by . . . economic protectionism.'" *Flynt v. Bonta*, 141 F.4th 918,

14    923 (9th Cir. 2025) (quoting *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356,

15    369 (2023)). A state engages in economic protectionism when it enacts laws that

16    discriminate against out-of-state goods or nonresident economic actors. *Tennessee*

17    *Wine & Spirits Retailers Ass'n v. Thomas*, 588 U.S. 504, 518 (2019). Cal. Health &

18    Safety Code §§ 111860–111865 discriminate structurally by blocking lawful out-of-

19    state transactions based solely on the product's presence in California. That burden

20    falls directly on out-of-state consumers and retailers who are prevented from

21    accessing products lawfully sold in their states, not because of a viable charge of

22    adulteration or misbranding, but because of the California Department of Public

23    Health's newfound disapproval of kratom.

24    In *Nat'l Pork Producers Council*, the Supreme Court discussed cases

25    involving "purposeful discrimination against out-of-state economic interests,"

26    including *Healy v. Beer Institute, Brown-Forman Distillers Corp. v. New York State*

27    *Liquor Authority*, and *Baldwin v. G.A.F. Seelig, Inc. See* 598 U.S. at 356. In Healy,

28

SNELL & WILMER

PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY
INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

1    the challenged statute discriminated by hoarding commerce for the benefit of in-state

2    businesses and discouraging consumers from engaging in out-of-state transactions.

3    *Id*. As being applied here, California law prevents Plaintiff from completing

4    transactions with out-of-state buyers and thereby restricts access to kratom for non-

5    Californians, favoring the State's policy preferences over the laws of other

6    jurisdictions.

7        Defendants assert that the embargo is lawful because it prohibits all sale and

8    distribution of embargoed goods, regardless of destination. But that is precisely what

9    creates the discriminatory effect: by treating all attempted distribution as if it were a

10   threat to in-state interests, California imposes a barrier triggered solely by the

11   product's physical presence within its borders. Crucially, California's embargo of

12   kratom is not based on any evidence that the product is contaminated or adulterated.

13   Instead, the CDPH has unilaterally determined that kratom itself is unsafe—even in

14   its pure, untainted form. That stands in stark contrast to numerous other states, such

15   as Utah, Arizona, Georgia, Mississippi, Nevada, Oklahoma, and others that have

16   enacted Kratom Consumer Protection Acts. These states have concluded that

17   kratom—by itself, properly manufactured, labeled, and sold—is safe enough to

18   permit its sale under regulated conditions. In doing so, they have balanced (unstated)

19   public safety concerns by regulating the wholesomeness and labeling of kratom

20   products, rather than banning kratom outright.[2]

21       In short, the embargo discriminates: it targets a product lawful in other

22   jurisdictions —not because of an objectively determined risk, but purely because a

23   single California regulatory agency deems kratom inherently unsafe based on

24   webpages reflected on the FDA website (none of which would be admissible at trial).

25   That is a quintessential violation of the dormant Commerce Clause, which prohibits

26

27   [2] Notably, California does not ban kratom.  In fact, as noted in Plaintiff's opening brief, a statute that explicitly regulates kratom is working through the California legislature, having passed overwhelming in the House.  Here,

28   California is attempting a regulatory ban which has an effect well beyond its borders.

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

1    states from exerting their policy preferences in a way that unduly burdens or

2    discriminates against interstate commerce.

3

4    **III.    THE CDPH'S ASSERTED POLICE POWER DOES NOT JUSTIFIY**

5    **THE STATUTE'S BURDEN ON INTERSTATE COMMERCE**

6    Defendants argue that their enforcement of Cal. Health & Safety Code §§

7    111860–111865 is justified under California's police power to protect residents from

8    potentially harmful products like kratom. Dkt. 14 at 10. Plaintiff does not dispute that

9    states have a legitimate interest in safeguarding the health and safety of their

10    residents. But that interest does not extend to regulating commercial transactions that

11    take place outside the state's borders. It is well established that a state's police power

12    ends at its territorial limits. Defendants do not explain how preventing Plaintiff from

13    shipping kratom to out-of-state purchasers serves the health and safety of California

14    residents.

15    At this time, Plaintiff is not challenging California's ability to regulate the sale

16    or use of kratom within California. Rather, Plaintiff challenges the State's attempt to

17    prohibit kratom from being sold to out-of-state buyers in jurisdictions where the

18    product is lawful. The statutes at issue burden Plaintiff's ability to engage in interstate

19    commerce by effectively blocking participation in legal markets beyond California's

20    borders. That burden is not incidental; it is the direct result of statutory language

21    applied in a way that forbids sale or distribution of embargoed goods without regard

22    to whether the buyer is located inside or outside the state.

23    Defendants do not meaningfully address this burden. Instead, they argue that

24    most state laws that substantially affect interstate commerce survive scrutiny because

25    they are not discriminatory. Dkt. 14 at 9. But even a nondiscriminatory statute may

26    violate the Dormant Commerce Clause if it imposes a burden on interstate commerce

27    that is clearly excessive in relation to the putative local benefit. Here, the burden is

28

SNELL & WILMER

PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY
INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

significant, and the putative local benefit is nonexistent. Maintaining the embargo will prevent Plaintiff from engaging in lawful out-of-state transactions which will destroy his family business. Maintaining the embargo for the purported benefit of Californians, however, is a mirage, vanishing under the slightest scrutiny.

## IV. THE REMAINING ELEMENTS FAVOR THE ENTRY OF A PRELIMINARY INJUNCTION

Plaintiff has demonstrated not only that its dormant Commerce Clause challenge will prevail, but also that (1) it will suffer irreparable harm absent a preliminary injunction; (2) the balance of equities tips in its favor; and (3) that a preliminary injunction would be in the public interest. *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

### a. Absent a Preliminary Injunction, Plaintiff Will Continue to Suffer Irreparable Harm

Defendants contend that Plaintiff will not suffer irreparable harm because "a $2 million economic injury, is plainly compensable and thus insufficient to support injunctive relief." Dkt. 14 at 10. Wrong. The deprivation of constitutional rights "unquestionably constitutes irreparable injury." *Elron v. Burns*, 427 U.S. 347, 373 (1976); *see also Citicorp Servs., Inc. v. Gillespie*, 712 F.Supp. 749, 753-54 (N.D. Cal. 1989) (a commerce clause violation "give[s] rise to a presumption of irreparable harm."). Further, Defendants cite no authority for the proposition that Plaintiff's economic injury is "plainly compensable" here. Dkt. 14 at 10.

Moreover, although pure economic injury does not constitute irreparable harm, certain business injuries can constitute such harm for purposes of preliminary injunctive relief. *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (noting that loss of "goodwill" constitutes a irreparable harm to a business). Preliminary injunctive relief is appropriate if a plaintiff can show "that absent preliminary relief they would suffer a substantial loss of business and perhaps even bankruptcy." *Doran v. Salem Inn, Inc.*, 422 U.S. 922,

PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

1   932 (1975).  Moreover, major disruption of a business which threatens its viability

2   has been held to constitute irreparable injury since this constitutes damage that is not

3   entirely monetarily compensable. *Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186

4   (2d Cir. 1995).  Plaintiff particularly alleged that the CDPH's embargo "has

5   prevented Plaintiff from selling $2 million of kratom to customers outside of

6   California," which puts Plaintiff "at risk of going out of business." Dkt. 14 at 14.

7   This is precisely the sort of major business disruption that rises to the level of

8   irreparable injury.

9   ### b. The Balance of Equities and Public Interest Favor a Preliminary Injunction

10

11   Defendants have no equities in their favor.  It is neither equitable nor in the

12   public interest to permit the CDPH to violate Plaintiff's constitutional rights. *See,*

13   *e.g.*, *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9 Cir. 2012) ("[I]t is always in the

14   public interest to prevent the violation of a party's constitutional rights."); *ACLU v.*

15   *Alvarez*, 679 F.3d 583, 590 (7 Cir. 2012) ("[T]he public interest is not harmed by

16   preliminarily enjoining the enforcement of a statute that is probably

17   unconstitutional."). Defendants can do no more than repeat the mantra that it is acting

18   to protect public health and safety. But over 35 years ago, the Supreme Court

19   cautioned that "the incantation of a purpose to promote the public health or safety

20   does not insulate a state law from Commerce Clause attack." *Kassel v. Consolidated*

21   *Freightways Corp. of Delaware*, 450 U.S. 662, 670 (1981).  Defendants rely on

22   hollow incantations because they lack a legal basis for continuing their effort to

23   enforce Cal. Health & Safety Code §§ 111860-111865 outside California's

24   boundaries, particularly with regard to kratom.

25   ### V.   CONCLUSION

26   For the foregoing reasons, the Court should grant the Motion and preliminarily

27   enjoin Defendants from preventing Plaintiff from lawfully selling kratom to non-

28   Californians.

SNELL & WILMER

- 10 -

PLAINTIFF'S REPLY IN SUPPORT OF
ITS MOTION FOR PRELIMINARY
INJUNCTION
3:25-cv-1430-RSH-SBC

4903-4225-4675

1   Dated: July 3, 2025

2

3                                              SNELL & WILMER L.L.P.

4                                              By: *s/ Andrew P. Young*
5                                                  Andrew P. Young
                                                   Emily E. Statham*
6                                                  apyoung@swlaw.com
                                                   estatham@swlaw.com

7                                              AMIN WASSERMAN GURNANI
8                                                  Robert Durkin, PA*
                                                   rdurkin@awglaw.com
9
                                                   Attorneys for Plaintiff Ashlynn
10                                                 Marketing dba KRAVE
                                               *admitted pro hac vice
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER

- 11 -

4903-4225-4675