UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| ASHLYNN MARKETING,<br><br>Plaintiff,<br><br>v.<br><br>ERICA PAN et al.,<br><br>Defendants. | Case No.: 25-cv-1430-RSH-SBC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**<br><br>[ECF No. 3] |
|---|---|

On June 4, 2025, plaintiff Ashlynn Marketing filed a Motion for Preliminary Injunction against defendants Erica Pan, in her official capacity as Director of the California Department of Public Health, and Rob Bonta, in his official capacity as Attorney General of California ("Defendants"). ECF No. 3. The motion has been fully briefed. ECF Nos. 13, 15. The Court heard argument on July 10, 2025. ECF No. 17.

I.   **BACKGROUND**

Plaintiff is a California corporation that manufactures and distributes products involving "kratom," a term referring to the leaves of a type of tree native to Southeast Asia. ECF No. 1 ¶¶ 1, 10. Plaintiff's headquarters, manufacturing facility, and warehouse are located in Santee, California. Plaintiff does not maintain any facilities outside of California. Although Plaintiff sells some product directly to consumers, the vast majority of its sales

are to wholesalers or distributors. Plaintiff's counsel asserted that consumers seek kratom as a mild stimulant having effects similar to that of coffee, but that Plaintiff does not market its own products as having any pharmaceutical properties. Plaintiff's counsel proffered that on average, about 80% of Plaintiff's sales are to out-of-state customers, with the remaining 20% of sales made to customers in California.

According to Plaintiff, the U.S. Food and Drug Administration ("FDA") "has stated that kratom, when added to food, is an unsafe food additive and that kratom cannot be lawfully marketed as an ingredient in conventional foods." *Id.* ¶ 35. In an import alert issued on February 21, 2025, the FDA stated, "based on FDA's review of the publicly available information regarding kratom, there does not appear to be a history of use or other evidence of safety establishing that kratom will reasonably be expected to be safe as a dietary ingredient." ECF No. 13-1 at 5. The alert continued, "[i]n fact, the scientific literature disclosed serious concerns regarding the toxicity of kratom in multiple organ systems." *Id.* The alert concluded that "kratom and kratom-containing dietary supplements and bulk dietary ingredients" are deemed "adulterated" under the federal Food, Drug, and Cosmetic Act, and announced that the FDA may "detain, without physical examination," the products identified in the alert. *Id.* at 6.

Plaintiff disagrees that there is any evidence that kratom is harmful. Plaintiff contends that "[t]he current state of kratom [] regulation among the individual states is a patchwork of both considered regulations and the absence of any kratom specific rules." ECF No. 1 ¶ 37. Plaintiff alleges:

> Seventeen (17) states have enacted a version of the Kratom Consumer Protection Act ("KCPA"), which explicitly permits kratom sales, subject to certain safety guard-rails. Six (6) states have banned the sale of kratom. The remaining states, like California, do not explicitly regulate the manufacturing, distribution and sale of kratom and kratom products.

*Id.* ¶ 39. Kratom is not a controlled substance regulated under the federal Controlled Substances Act.

On May 15, 2025, the California Department of Public Health ("DPH") inspected Plaintiff's warehouse and issued a Notice of Violation pursuant to California Health & Safety Code §111860. ECF No. 3 at 5. The DPH asserted that Plaintiff's kratom products were "adulterated" and "misbranded," and were manufactured and held in an unregistered food facility. *Id.* The DPH accordingly embargoed Plaintiff's inventory of over $2 million in kratom products. *Id.* Under California Health & Safety Code § 111865, "[i]t is unlawful for any person to remove, sell, or dispose of a detained or embargoed food, drug, device, or cosmetic" without approval of the DPH or a court.

Plaintiff's counsel thereafter engaged in correspondence with the DPH in an effort to lift the embargo, but the embargo remains in place. The DPH advised Plaintiff on May 27, 2025, that it would refer the matter to the Office of the District Attorney for condemnation proceedings if Plaintiff did not submit a disposition plan for the embargoed products. ECF No. 1 ¶ 74. Counsel advised at the motion hearing that apart from the embargo and this lawsuit, no other proceedings are pending as to the kratom at issue.

Plaintiff asserts that if the embargo remains in place, Plaintiff will be forced to shut down and lay off its approximately 30 employees. ECF No. 3 at 6.

On June 4, 2025, Plaintiff filed the instant action. ECF No. 1. The Complaint pleads three claims under the dormant Commerce Clause and seeks declaratory and injunctive relief. *Id.* The same day, Plaintiff filed its motion for a preliminary injunction. ECF No. 1.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The "grant of a preliminary injunction is a matter committed to the discretion of the trial judge." *Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1307 (9th Cir. 2013) (citation omitted). The Ninth Circuit employs a "version of the sliding scale" approach where "a stronger showing of one element may offset a weaker showing

of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-35 (9th Cir. 2011). Generally, a preliminary injunction is considered "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

### III. ANALYSIS

#### A. Likelihood of Success on the Merits

The three claims in the Complaint are all based on the Commerce Clause of Article I of the U.S. Constitution, which grants Congress the power to "regulate Commerce . . . among the several States." U.S. Const. art. I., § 8, cl. 3. The Supreme Court has determined that this clause not only vests Congress with the power to regulate interstate trade, but also "contains a further, negative command, one effectively forbidding the enforcement of certain state economic regulations even when Congress has failed to legislate on the subject." *National Pork Producers Council v. Ross*, 598 U.S. 356, 368 (2023) (cleaned up).

The Complaint advances three theories under dormant Commerce Clause jurisprudence: (1) discrimination, (2) extraterritorial regulation, and (3) excessive burden on interstate commerce. The Complaint brings both a facial challenge to the statutes at issues, California Health & Safety Code §§ 111860 to 111865, as well as a challenge to those statutes as applied to the DPH's embargo of Plaintiff's kratom in this case. At the motion hearing, Plaintiff's counsel stated that Plaintiff was pursuing only an as-applied and not a facial challenge.

#### *1. Discrimination*

"State laws offend the Commerce Clause when they seek to build up domestic commerce through burdens upon the industry and business of other States." *National Pork*, 598 U.S. at 369 (cleaned up). The Supreme Court has explained:

> Today, this antidiscrimination principle lies at the "very core" of our dormant Commerce Clause jurisprudence. *Camps Newfound/ Owatonna, Inc. v. Town of Harrison*, 520 U.S. 564, 581 (1997). In its "modern" cases, this Court has said that the Commerce Clause prohibits

> the enforcement of state laws "driven by ... 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Department of Revenue of Ky. v. Davis*, 553 U.S. 328, 337-38 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

*Id.* at 369. At the motion hearing, Plaintiff's counsel clarified that Plaintiff was *not* alleging economic protectionism, or discrimination in favor of in-state businesses at the expense of out-of-state businesses. *See also* ECF No. 15 (Plaintiff's reply brief) at 2 ("The issue is not preferential treatment for in-state businesses, but California's subordination of lawful interstate commerce to its own policy choices."). Indeed, Plaintiff is an in-state business, and the embargo does not distinguish between Plaintiff's ability to sell kratom to out-of-state or other in-state businesses – Plaintiff is prohibited from selling to any customer.

### 2.  Extraterritorial Regulation

Plaintiff's second theory is one of unlawful extraterritorial regulation. Plaintiff cites the Ninth Circuit's recent decision in *Flynt v. Bonta*, 131 F.4th 918 (9th Cir. 2025), in which the Ninth Circuit stated that the Supreme Court's decision in *National Pork* "left open the possibility that 'a law that *directly* regulated out-of-state transactions by those with *no* connection to the State' could violate the dormant Commerce Clause or some other constitutional limitation." *Flynt*, 131 F.4th at 924 (quoting *National Pork*, 598 U.S. at 375-76 & n.1). *National Pork* did not identify the requirements for making such a claim.

Plaintiff relies on the Ninth Circuit's decision in *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018). In *Daniels*, a medical waste handler challenged the California Medical Waste Management Act under the dormant Commerce Clause. The act required medical waste that had been generated in California to be incinerated, rather than being treated by a means other than incineration, regardless of where the medical waste was located. *Id.* at 612-13. The Ninth Circuit recited Supreme Court caselaw holding that "a statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* at 614

1  (quoting *Healy v. Beer Inst.*, 491 US. 324, 336 (1989)). Applying this standard, the Ninth Circuit upheld an injunction against California on the grounds that the challenged statute "attempt[ed] to reach beyond the borders of California and control transactions that occur wholly outside of the State after the material in question—medical waste—has been removed from the State." *Daniels*, 889 F.3d at 615.

*Daniels* does not apply to the facts here. The DPH embargo of kratom at Plaintiff's warehouse in Santee does not occur "wholly outside" of California; indeed, it occurs wholly *inside*, since the kratom is located in California and is embargoed there. The Supreme Court in *National Pork* recognized that "[i]n our interconnected national marketplace, many (maybe most) state laws have the practical effect of controlling extraterritorial behavior." *National Pork*, 598 U.S. at 374 (citation and internal quotation marks omitted). The fact that the embargo prevents an out-of-state party from purchasing kratom from Plaintiff does not amount to a violation of the dormant Commerce Clause. Indeed, the Ninth Circuit in *Flynt* referred to "the usual legislative power of a State to act upon persons and property within the limits of its own territory," and stated that even where enforcement of a state statute "results in extraterritorial spillover effects on what plaintiffs may do outside the state . . . these effects are simply a function of California's non-discriminatory terms of doing business . . . in the state." *Flynt*, 131 F.4th at 929 (cleaned up).

### 3. Excessive Burdens

Plaintiff's third theory is based on *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970), in which the Supreme Court stated that where a state statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Id.* at 142. More recently in *National Pork*, the Supreme Court explained that the "heartland" of cases under *Pike* involves discrimination against out-of-state businesses. *National Pork*, 598 U.S. at 379-80. The Supreme Court explained, "if some of our cases focus on whether a state law discriminates

on its face, the *Pike* line serves as an important reminder that a law's practical effects may also disclose the presence of a discriminatory purpose." *Id.* at 377. The Supreme Court declined to rule out altogether the viability of a *Pike* claim absent allegations of discrimination, but remarked that the absence of such an allegation "is not an auspicious start" for a viable *Pike* claim. *Id.* at 380. Here, Plaintiff has not alleged that the embargo discriminates on its face or has a discriminatory purpose, and Plaintiff's *Pike* claim likewise faces an uphill battle.

In *National Pork*, the Supreme Court went on to say that even under the plaintiff's reading of *Pike*, the case "requires a plaintiff to plead facts plausibly showing that a challenged law imposes 'substantial burdens' on interstate commerce *before* a court may assess the law's competing benefits or weigh the two sides against each other." *National Pork*, 598 U.S. at 383. The Supreme Court held that the plaintiffs in that case failed to meet that threshold standard, concluding that the allegations amounted to merely a "speculative possibility." *Id.* at 387. The Supreme Court rejected the plaintiffs' *Pike* claim even though "California's required . . . pork-production practices throughout the United States will cost American farmers and pork producers hundreds of millions (if not billions) of dollars." *National Pork*, 598 U.S. at 405-067 (Kavanaugh, J., concurring in part and dissenting in part).

In *Flynt*, the Ninth Circuit likewise determined that the plaintiffs in that case failed to show that the California statutes at issue, regulating gambling licensees, resulted in burdens on interstate commerce that were "substantial." *Flynt*, 131 F.4th at 932. The Ninth Circuit stated that *Pike* "protects the interstate market, not particular interstate firms, from … burdensome regulations." *Id.* (quoting *Exxon Corp. v. Governor of Md.*, 437 U.S. 117, 127-28 (1978)). "[A] loss to some specific market participants does not, without more, suggest that the state statute impedes substantially the free flow of commerce from state to state." *Flynt*, 131 F.4th at 932-33.

Here, Plaintiff's theory of substantial burden is that "[c]ustomers in other states are effectively prohibited from purchasing kratom originating in California," and that

"California kratom sellers like Ashlynn are embargoed from out-of-state customers that are vital to their business." ECF No. 3 at 13. But Plaintiff has not established – by marshalling evidence or by citing relevant authority – that a statewide prohibition of kratom would amount to a "substantial burden" on interstate commerce requiring a balancing under *Pike*. Moreover, Plaintiff is not facing a statewide prohibition; instead, it is challenging the DPH's embargo of a portion of the over $2 million in kratom products held at Plaintiff's warehouse in Santee. Plaintiff has failed to show a burden on interstate commerce exceeding that which was rejected as insufficient in *National Pork* and in *Flynt*.

Accordingly, Plaintiff has not shown a likelihood of success on any of its theories under the dormant Commerce Clause.

**B.    Irreparable Harm**

Plaintiff argues irreparable harm based on (1) deprivation of its constitutional rights, and (2) Plaintiff's contention that without the profits from the sales of its embargoed kratom, "Plaintiff is at risk of going out of business and will be forced to fire all of [its] employees." ECF No. 3 at 14. Because the Court concludes that Plaintiff has not established a likely deprivation of constitutional rights, the Court focuses on the harm to Plaintiff's business.

"Purely economic harms are generally not irreparable, as money lost may be recovered later, in the ordinary course of litigation." *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015). However, the Ninth Circuit has stated that "[t]he threat of being driven out of business is sufficient to establish irreparable harm." *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1474 (9th Cir. 1985) (citing *Los Angeles Memorial Coliseum Comm'n v. National Football League*, 634 F.2d 1197, 1203 (9th Cir.1980)). "[P]laintiffs must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

Here, Plaintiff relies on a sworn declaration of its CEO, stating, "[i]f the embargo is not listed as it applies to out-of-state shipments, Ashlynn will be forced to shut down. If

Ashlynn is forced to shut down, I will have to lay off my 30 employees, all of whom support families." ECF No. 3-2 ¶ 11. Plaintiff's CEO also states that if Plaintiff is not able to resume operations soon, it "will lose goodwill with a customer base that took more than ten years to build." *Id.* ¶ 12.

It bears noting that Plaintiff does not challenge the embargo as it applies to Plaintiff's sales to customers in California. Thus, even if Plaintiff succeeds in this lawsuit, going forward it would be able to sell only to customers outside of California. Plaintiff's theory of irreparable injury is therefore based on the embargo's effect on its planned out-of-state sales for the kratom at issue, recognizing that its in-state sales may legitimately be prohibited.

The evidence submitted by Plaintiff does not address, in any detail, Plaintiff's current financial condition, monthly revenue or operating expenses, or current assets; nor does it address what portion of the over $2 million in kratom is destined for out-of-state purchasers or the expected profit margin on those sales that is needed to avoid shutting down. At the motion hearing, Plaintiff's counsel proffered that Plaintiff's annual revenues for the last calendar year exceeded $30 million and estimated that 80% of Plaintiff's sales in general are to customers outside of California. Plaintiff's counsel also clarified that Plaintiff does not have lines of business other than the sale of kratom related products.

The evidence presented by Plaintiff of irreparable injury is relatively generalized and conclusory in nature. *See Am. Passage*, 750 F.2d at 1473 (concluding that affidavits from plaintiff's executives delineating the disruptive effects of alleged unlawful contracts were "conclusory and without sufficient support in facts"). Plaintiff has not adequately supported its CEO's assertion that the profits on some portion of $2 million in kratom to be sold out-of-state customers are in fact necessary for the ongoing viability of the company on any concrete timeline, or that it will suffer irreparable harm to its goodwill as a result of the DPH embargo. Certainly, if Plaintiff continues to import kratom into California and the DPH continues to embargo it, Plaintiff will be unable to continue to

serve its customers by shipping kratom from California. However, the Court declines to infer from this that Plaintiff has no option but to shut down.[1]

Based on the evidence before the Court, the Court concludes that at this time Plaintiff has established some possibility, but not a likelihood, of irreparable harm in the absence of a preliminary injunction.

### C. Balance of Equities and Public Interest

With respect to the remaining factors, "[w]hen, like here, the nonmovant is the government, the last two *Winter* factors 'merge.'" *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)). In deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief ... pay[ing] particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24 (internal citations and quotations omitted). "The assignment of weight to particular harms is a matter for district courts to decide." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 475 (9th Cir. 2010).

On balance, the Court finds that the equities and public interest weigh against a preliminary injunction here. Although the Court has insufficient evidence on this motion make pronouncements on the safety of kratom, it is uncontested here that both federal and California authorities have expressed concerns about the safety of kratom; and that those authorities have taken action based on those concerns, including the FDA's import alert and the DPH's embargo. Given these concerns, the potential risk to public health urges caution in considering Plaintiff's request to lift the embargo – although some states to which Plaintiff intends to sell have already passed legislation providing for the regulation and sale of kratom, others have not. Additionally, apart from Plaintiff's challenges under

---

[1] At the motion hearing, in response to the Court's question, Defendant's counsel indicated that the embargo would not prevent Plaintiff from conducting operations in another state; it appears that neither party has explored this possibility.

the dormant Commerce Clause – as to which the Court concludes that Plaintiff has failed to show a likelihood of success – Plaintiff has made no other challenge to the legality of the DPH's embargo under federal or state law.

Based on the above consideration of the *Winter* factors, the Court is not persuaded that Plaintiff is entitled to the requested preliminary injunction.[2]

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion, ECF No. 3.

**IT IS SO ORDERED**.

Dated: July 16, 2025

_____
Hon. Robert S. Huie
United States District Judge

---

[2] Defendants have requested judicial notice of various documents [ECF No. 13-1], to which Plaintiff objects [ECF No. 16]. The only one of those documents the Court cites herein is the FDA import alert from February 21, 2025. The Court properly takes judicial notice of the issuance of the document, without evaluating the accuracy of the FDA's statements regarding the safety of kratom. In light of the foregoing, the Defendants' request for judicial notice as to the remaining documents is denied as moot, and Plaintiff's objection to taking judicial notice of the FDA import alert is overruled.